**Linda LAUBE, et al., Plaintiffs,**

v.

**Michael HALEY, et al., Defendants.**

**No. CIV.A. 02–T–957–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Jan. 29, 2003.

Stephen B. Bright, Tamara H. Serwer, Marion D. Chartoff, Lisa Kung, Southern Center for Human Rights, Atlanta, GA, John A. Russell, III, Aliceville, AL, for plaintiffs.

Ellen Ruth Leonard, Office of Atty. Gen., Montgomery, AL, William F. Addison, Andrew W. Redd, Ala. Dept. of Corrections, Legal Div., Montgomery, AL, for Michael Haley, Gladys Deese, Patricia Hood, Mary Carter, defendant.

Michael M. Shipper, Miller, Hamilton, Snider & Odom, Mobile, AL, Hugh C. Nickson, III, Miller, Hamilton, Snider & Odom, Montgomery, AL, Gile G. Perkins, Miller Hamilton Snider & Odom, LLC, Birmingham, AL, for NaphCare, Inc., Francis Henderson, defendants.

Edward A. Hosp, James V. Doyle, Jr., Office of Governor, Montgomery, AL, for Don Siegelman, defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

The complaint in this lawsuit charges that conditions for female inmates in the Alabama State Prison System violate the Eighth Amendment to the United States Constitution. The plaintiffs are female inmates incarcerated in three state prison facilities; the defendants are various officials of the State of Alabama and its Department of Corrections. On December 2, 2002, this court preliminarily enjoined the defendants from continuing to operate Julia Tutwiler Prison for Women in an unconstitutionally unsafe manner. *Laube v. Haley*, 234 F.Supp.2d 1227, 1253 (M.D.Ala. 2002). The defendants were ordered to file a plan that redressed immediately and fully the unconstitutional conditions at Tutwiler. *Id.* The defendants filed a proposed plan on December 30, 2002, and the plaintiffs responded on January 15, 2003.[1] The court heard oral arguments on the defen-

---

1. The defendants note in their plan that, in its December 2002 opinion, the court incorrectly characterized the second shift at Tutwiler as taking place between 6:00 a.m. and 2:00 p.m. *Laube,* 234 F.Supp.2d at 1233–34. The second shift actually takes place between 2:00 p.m.

dants' proposed plan on January 21, 2003. For the reasons that follow, the court concludes that the defendants' plan is inadequate.

■ The defendants' plan is inadequate in two substantial respects. First, the defendants have requested relief that the court has no authority to grant. They have requested, as part of their plan to reduce overcrowding, that this court temporarily restrain or prohibit the transfer of female inmates from county jails to Tutwiler. As the plaintiffs have correctly noted, this relief is beyond the authority of this single-judge court. Under the Prison Litigation Reform Act, only a three-judge panel may issue "prisoner release orders" and only in certain circumstances. 18 U.S.C.A. § 3626(a)(3). Because a "prisoner release order" is "any order ... that directs the release from or nonadmission of prisoners to a prison," 18 U.S.C.A. § 3626(g)(4), the relief the defendants seek constitutes a "prisoner release order" as defined by the statute. Therefore, this single-judge court may not enter the order sought by the defendants.

Furthermore, the defendants themselves do not otherwise have the power to restrain the transfer of female inmates from county jails to Tutwiler. The defendants in this case are involved in state-court litigation concerning the backlog of state inmates housed in county jails across the State. In an action styled *Barbour County v. Haley*, CV–92–388–S, now pending in the Circuit Court of Montgomery County, Alabama, a class of Alabama counties has sued Corrections Department officials to have state prisoners removed from county jails. The state court in *Barbour* has or-

dered these officials to accept state-ready inmates sent from various county jails in Alabama. The actions and efforts of Corrections Department officials to block the transfer of state-ready female inmates from county jails to Tutwiler, as has been suggested in this federal litigation, would be in direct contradiction to the state-court order.

Therefore, neither this court, nor the defendants on their own initiative, may restrain the transfer of female inmates to Tutwiler. Because this part of the defendants' plan was a key element, and because it is not viable, the defendants should modify and adjust their plan with new and substantial measures to achieve the same ultimate goal of redressing the unconstitutional conditions at Tutwiler, albeit now by different means.

■ The defendants' proposed plan is also inadequate because they indicated at the January 2003 oral argument that their proposed remedial measures are constrained by the fact that they lack adequate funds. In the words of their counsel, "the problem is, we've run out of money, pure and simple." As this court stated in its companion opinion to the preliminary injunction, "budgetary concerns are not a defense to constitutional violations." *Laube*, 234 F.Supp.2d at 1249. Because the lack of funds is the main factor determining the relief outlined in the defendants' plan, the plan must be modified. The defendants should submit a new plan which assumes that the funds necessary to address the unconstitutionally unsafe conditions at Tutwiler will be made available.

As discussed above, two central premises of the proposed plan are not valid and

and 10:00 p.m. With this order, the court modifies the opinion to reflect this change

and this change only. This inaccuracy does not affect the substance of the opinion.

necessitate its modification. Moreover, ordering the plan to be modified has an added benefit: the new Governor of Alabama, Bob Riley, will now have an opportunity to participate in the drafting of a revised plan. The defendants' proposed plan was drafted by only the Department of Corrections defendants; neither the Governor of Alabama at the time of the plan (Don Siegelman) nor the new Governor (Riley) participated in the plan's drafting. At the January 2003 oral argument, Governor Riley requested an opportunity to have input into the plan; he and his staff will now have the chance to participate, and the resulting plan will be a product of the efforts of all defendants. This, too, is a more desirable result.[2] As this court has stated before, the defendants should be given considerable deference in determining an appropriate remedy for the constitutional violations involved. *Bell v. Wolfish*, 441 U.S. 520, 547–48, 99 S.Ct. 1861, 1878–79, 60 L.Ed.2d 447 (1979) (prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Therefore, it is ORDERED that the defendants submit by February 7, 2003, a new plan that compensates for the deficiencies identified in this order.

---

[2] In addition, if the revised plan includes essentially the same measures to address understaffing as does the current plan, the defendants' revised plan should explain how staffing Tutwiler's 16 priority posts at all times, as suggested in the current plan, will not result in Tutwiler being in a constant state of lockdown.